IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 19-cv-02981-RM-KLM

KAT CONSTRUCTION MANAGEMENT LLC, a Colorado limited liability company,

    Plaintiff,

v.

SAFECO INSURANCE COMPANY OF AMERICA, a New Hampshire corporation

    Defendant.

---

**ORDER**

---

This is a property insurance dispute arising from hail damage to the home and property of Huntington Brown, who held an insurance policy (the "Policy") with the Defendant, Safeco Insurance Company of America (the "Defendant" or "Safeco"). Brown hired the Plaintiff, KAT Construction Management, LLC (the "Plaintiff" or "KAT") to make repairs to his home, including to his roof and to other structures on his property. Brown later assigned any remaining claims under the Policy to KAT, and KAT filed this action. At issue is Safeco's Motion for Summary Judgment (ECF No. 34). KAT filed a response (ECF No. 43) and Safeco filed a Reply (ECF No. 45). The Motion is now ripe for resolution. Upon review of the Motion and responses, relevant parts of the court record, and the applicable statutes and case law, and being otherwise fully advised, the Court finds and orders as follows.

**I.    BACKGROUND**

Safeco insured Brown's property at the time the property suffered damage from a hailstorm in 2017. (ECF No. 35-10.) Pursuant to the Policy, Safeco would pay for covered losses at replacement cost, specifically, as pertinent here:

> (1)    We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

    (a)    the limit of liability under the policy . . . ;

    (b)    the ***replacement cost*** of that part of the damaged building for equivalent construction and use on the same premises as determined shortly following the loss;

    (c)    the full amount actually and necessarily incurred to repair or replace the damaged building as determined shortly following the loss; [or]

    (d)    the direct financial loss you incur . . . .

(ECF No. 35-10, p.40, emphasis original.)

Following the storm, Brown entered into a Work Management Contract with KAT and subsequently filed a claim under the Policy. (ECF No. 35-7.) Within three days of that claim, Safeco assigned Brian Sewald to adjust the claim and he inspected Brown's property. Five days later, on November 21, 2017, Sewald sent Brown an estimate for covered repairs and replacements to his property. Sewald concluded that the total actual cash value, after accounting for Brown's $2,500.00 deductible, would be $16,060.93 and that Brown could collect an additional $12,057.27 of recoverable depreciation after repairs were completed, for a total of $28,118.20. (ECF Nos. 35-7, 35-9.) Safeco sent Brown a check for the initial $16,060.93 the same day. (ECF No. 35-12.)

Apparently Brown and/or KAT decided that because of the impending winter weather, it would be sensible to wait until the Spring to begin repairs to Brown's roof. (ECF No. 44-8). Therefore, the next recorded communication between the parties did not take place until April of 2018, when KAT emailed Sewald to let him know that KAT had discovered some "differences" between its estimate and Safeco's estimate and setting them out for Sewald's consideration. (ECF No. 44-11.) Among the concerns raised were that the Safeco estimate purportedly did not include money to (1) repair a damaged sculpture in Brown's backyard; (2) assemble three replacement Rubbermaid sheds; (3) replace an Adirondack chair (it included replacement of one chair, but two were damaged); (4) replace two skylights that KAT had concluded could not be repaired; (5) sand

windows prior to repainting; (6) replace two metal sheds; (7) repair plumbing as required to comply with the building code; (8) install ventilation for the attic/roof to comply with the building code; (9) purchase new roofing material; (10) upgrade guttering to meet the building code requirements; (11) repair damaged paint on patio posts; (12) pay for temporary repairs already made to the roof; (13) remove skylights and install new trim work; and (14) document the ongoing repairs.  Sewald responded that Safeco would not be amending its estimates but informed KAT that it could submit any code upgrades that would be required by the city and Safeco would review them.  In mid-May, KAT emailed the code information, as well as invoices for completed work, and requested payment.  (ECF No. 44-3.)

At the end of May, Safeco informed KAT that Sewald was no longer handling the claim and in mid-June further informed KAT that Safeco had reassigned the claim to Alan Naas.  (ECF Nos. 44-5, 44-6.)  KAT emailed Naas on June 21, 2018 to inquire about the state of the claim and Naas responded the following morning, Friday, June 22, 2018, to let KAT know that he would review all the materials and get back to them by the close of business the following Monday.  (ECF No. 44-7.)  KAT sent its total estimate for the work to Safeco, reflecting a total for all of the work of $86,520.14.  (ECF Nos. 35-2, 44-1.)

On July 2, 2018, Naas sent Brown a revised calculation of the benefits it would pay on his claim.  (ECF No. 35-17.)  Based on the additional information provided by KAT, Naas now calculated a claim total of $65,082.54.  Safeco made the payment of $12,057.27 for recovered depreciation and then a final additional payment of $34,464.34.  (ECF No. 35-12.)  Safeco sent the final payment to Brown's mortgage company which, in turn, released that payment to Brown and KAT upon receipt of certain documentation.  (ECF No. 35-21.)  Included in that documentation was an Addendum to Work Agreement between Brown and KAT, dated July 20, 2018.  It set out the "Total Contract Price" as $65,082.54 and was signed by both parties.  Also included was an

3

invoice reflecting prior payments of $28,118.20 plus $2,500.00 for the deductible, and a total due of $34,464.34. And it included a Contractor's Waiver of Lien, which stated that, conditional upon payment of the total $65,082.54, "all claim(s) of lien for labor and/or materials will be waived." (ECF Nos. 35-21, 46-3.)

KAT and Naas exchanged several additional emails regarding the estimate, KAT arguing for the higher total and Naas informing KAT that Safeco would not be increasing payments for overhead and profit beyond that already included in the estimate. (ECF No. 44-13.) Naas then emailed Brown to inform him that Safeco and KAT had "been unable to reach an agreed cost" and noting that "[t]here is a policy provision for an Appraisal process," and suggesting that an appraisal would be the next step in attempting to reach such an agreement. (ECF No. 35-19.)

Apparently, Brown never requested an appraisal. Instead, over a year later, Brown signed an "Assignment of Remaining Insurance Claims," giving KAT the right to pursue any benefits related to this claim that might remain under Brown's insurance Policy. (ECF No. 44-2.) In return, KAT again agreed that it would not file any lien or assert any claim against Brown or his home. KAT submitted an affidavit with its Response to the Motion for Summary Judgment in which it asserted that "[t]he purpose of executing the Assignment was to ensure that instead of invoicing the homeowner/policy holder, [Brown], for additional amounts owed for the work on his residence . . . [KAT] would seek reimbursement for the remaining amount owed directly from [Safeco]." (ECF No. 44-14.)

A few days after executing the Assignment, KAT filed this suit. (ECF No. 1.) It asserts claims for breach of contract and for unreasonable delay or denial of insurance benefits pursuant to sections 10-3-1115 and -1116 of the Colorado Revised Statutes. It seeks payment of the full amount of the benefit to which it believes it is entitled, as well as to various statutory penalties

including twice the amount of the covered benefits. Safeco filed an Answer and raised several defenses. (ECF No. 6.)

## II.  LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

### B.  Interpretation of an Insurance Policy

Applying Colorado law, the Court interprets an insurance policy in the same manner it would any other contract, applying the same "well-settled principles of contract interpretation." *Rocky Mountain Prestress, LLC v. Liberty Mutual Fire Ins. Co.*, 960 F.3d 1255, 1259 (10th Cir. 2020) (quoting *Cypris Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003)). As with other kinds of contracts, the Court tries to "carry out the intent and reasonable expectations of the parties at the time they drafted the policy." *Abady v. Certain Underwriters at*

5

*Lloyd's London Subscribing to Mortgage Bankers Bond No. MBB-06-0009*, 317 P.3d 1248, 1252 (Colo. App. 2012). "The policy must be enforced as written unless there is an ambiguity in the policy language." *Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo. 1994) (citation omitted). "A policy provision is ambiguous if it is susceptible to more than one reasonable interpretation. Once an ambiguity in the policy language is found, it is construed against the drafter of the document and in favor of the insured." *Id.* The question of ambiguity is determined based on the facts and circumstances of the particular case and the Court should "enforce the plain language of the policy . . . and avoid any strained and technical constructions." *Abady*, 317 P.3d at 1252. Simply because the parties disagree about how a policy should be interpreted does not mean that the policy language is ambiguous, *Houtz*, 883 P.2d at 1061, and although ambiguous provisions are interpreted in favor of the insured, the Court should not simply adopt the insured's interpretation wholesale, *Rocky Mountain Prestress*, 960 F.3d at 1259-60.

### III.   ANALYSIS

#### A. Breach of Contract

KAT's first claim is for breach of contract. In Colorado, "a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (citations omitted). KAT asserts that Safeco breached because it failed to pay all of the covered benefits due under the Policy. (ECF No. 1.)

Safeco responds that it fulfilled its obligations under the Policy when it paid $62,582.54, which it asserts was the "full amount actually and necessarily incurred to repair or replace the damaged building," and "the direct financial loss" of its insured, Brown. (ECF No. 34.) KAT, in turn, responds that Safeco misinterprets those phrases in the Policy—it argues that "the provision

6

is at best ambiguous" and that "the full amount actually and necessarily incurred to repair or replace the damaged building" could mean "Brown's ultimate financial liability to restore his property to pre-loss condition" or "an amount actually and necessarily required to pay any contractor liens for work performed." (ECF No. 43.) KAT also argues, in essence, that Brown's liability for repairs was not limited to the amount for which he had been invoiced as of the time Safeco made its coverage decision—that the full cost of repairs was not conclusively established at that point.

As these arguments make clear, the parties do not dispute the operative facts on this claim, but only the proper interpretation of the insurance policy provision at issue, which is a legal question that this Court can properly resolve. *Houtz*, 883 P.2d at 1061.

In the Court's view, the provision is not ambiguous. The Tenth Circuit has previously noted that the term "to incur" means "to 'suffer or bring on oneself,' as in a 'liability or expense,'" *In re Dawes*, 652 F.3d 1236, 1239 (10th Cir. 2011) (quoting Black's Law Dictionary 782 (8th ed. 2004)), or "'[to] become liable or subject to,'" *id.* (quoting Webster's Third New International Dictionary 1146 (2002) (unabridged)). Thus, the plain language of the policy provides that Safeco will pay its insured the lesser of either: (1) the cost to replace the damaged portions of the property; (2) the expenses incurred by the insured in paying for repairs to the property; or (3) the direct financial loss suffered by the insured as a result of the damage. (ECF No. 35-10). The policy is written in terms of the costs sustained by the insured, which makes sense, because it is a contract between Safeco and Brown, and between Safeco and KAT. Interpreting the same provision in a different case, the United States District Court for the Northern District of Texas explained that under any option, the "Plaintiffs' recovery is limited to their actual, tangible loss," and would be limited to "the lower bound of whichever option Plaintiffs chose, the amount actually and necessarily spent for repairs for replacement cost or Plaintiffs' direct financial loss for

actual cash value." *Johnson v. Safeco Ins. Co. of Indiana*, 240 F.Supp.3d 555, 565 (N.D. Tex. 2017).  Thus, Safeco's obligation in this case was to pay no more than the financial liability actually experienced by Brown.

While Brown's contract right under the Policy could be assigned, that assignment cannot "materially change the duty of the obligor [Safeco] or materially increase the burden or risk imposed on him." *Allstate Ins. Co. v. Medical Lien Mgmt. Inc.*, 348 P.3d 943, 947 (Colo. 2015). Thus, as the assignee, KAT "stands in the shoes of the assignor" and can take "only as good claim as his assignor had." *Regency Realty Inv'rs, LLC v. Cleary Fire Protection, Inc.*, 260 P.3d 1, 6 (Colo. App. 2009) (quoting *Tivoli Ventures, Inc. v. Bauman*, 870 P.2d 1244, 1248 (Colo. 1994), and *McCormick v. Diamond Shamrock Corp.*, 487 P.2d 1333, 1335 (Colo. 1971)).  This doctrine, too, supports the Court's conclusion that Safeco's only obligation was to pay for Brown's liability, not to satisfy any claimed expenses of KAT.

KAT argues that this interpretation would lead to an "absurd result" that would prevent a contractor from taking an assignment of a claim to recover any amounts beyond what is written in a contract.  (ECF No. 43.)  The Court disagrees, however, that such a result would be absurd. KAT chose to create a written contract with Brown, limiting his liability to the precise amount already allowed by Safeco's adjustment.  To the extent that KAT believed Safeco's numbers were too low, KAT did not have to agree with Brown that his liabilities were thus limited.  While the law apparently permits assignments like the one executed here, it does not require contractors to accept such assignments in lieu of payment.  Nor does it require the contractor to release all its liens for less than the full cost of the work it has performed.

It seems clear that Brown himself would be entitled to no benefits from Safeco beyond those which he already received.  Once KAT signed the Addendum to Work Agreement, issued the Invoice reflecting a total cost of $65,082.54, and executed the Contractor's Waiver of Lien

upon the payment of $65,082.54, Brown's liability was fixed at $65,082.54. Safeco then made payments to Brown in the amount of $62,582.54 and Brown paid the additional $2500.00 deductible amount to KAT and those payments covered in full his expenses for the repairs to his property. As noted above, KAT now stands in Brown's shoes and if Brown could recover no more than the $65,082.54 less his $2,500 deductible then KAT could recover no more than that amount. The Court concludes, therefore, that Safeco performed its obligation under the Policy.

KAT argues that Safeco waived this argument because it did not deny coverage on this basis when it adjusted Brown's claim. (ECF No. 43.) KAT correctly notes that an insurer can waive a defense to coverage if it does not assert a particular defense prior to litigation. *See Walker v. American Standard Ins. Co. of Wisconsin*, 2011 WL 3876901 at * 4-5 (D. Colo. 2011). This rule, however, applies when an insurer *denies* coverage, which did not happen in this case. *See id.* at *5 (noting that the insurer did not deny coverage and therefore the waiver rule did not apply in that case). In this case, Safeco never denied coverage for Brown's loss—it sent the first check within days of the filing of Brown's claim. (ECF No. 35-12.) The only issue in dispute was the full amount due to Brown, which means that at most Safeco unreasonably delayed payment. *See Soicher v. State Farm Mutual Automobile Ins. Co.*, 351 P.3d 559, 568 (Colo. App. 2015) (noting that in case in which insurer did not dispute coverage, but disputed only the amount to be paid, the case involved an alleged unreasonable delay, not an unreasonable denial). In any event, as Safeco notes, "waiver cannot have created liability where none existed under the policy." *Empire Cas. Co. v. St. Paul Fire and Marine Ins. Co.*, 764 P.2d 1191, 1198 (Colo. 1988). The Court therefore concludes that Safeco did not waive this argument.

Because the Court concludes that no genuine issue of material fact remains on KAT's first, breach of contract claim, and because it also concludes that Safeco is entitled to judgment as a matter of law on this claim, Safeco's Motion for Summary Judgment is GRANTED on the breach

of contract claim.

### B. Unreasonable Delay or Denial of Insurance Benefits Contrary to §§ 10-3-1115 and 10-3-1116, C.R.S. (2021).

KAT's second claim is that Safeco unreasonably delayed payment of an owed benefit without a reasonable basis, contrary to the requirements of sections 10-3-1115 and -1116. (ECF No. 1.)

Under Colo. Rev. Stat. § 10-3-1115(1)(a), "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Thus, to prevail on a statutory claim, any delay or denial must be both unreasonable and for a covered benefit. *See Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 848 (Colo. 2018) ("[T]he only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis." (quotation marks and citations omitted)); § 10-3-1115(2) ("[A]an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action."). KAT bears the burden of establishing that Safeco acted unreasonably. *Williams v. Owners Ins. Co.*, 621 F. App'x 914, 919 (10th Cir. 2015) (citing *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008)). When determining whether an insurer acted unreasonably, "the question is whether a reasonable insurer under similar circumstances would have denied or delayed payment of the claim. The reasonableness of an insurer's conduct must be determined objectively, based on proof of industry standards." *Thompson v. State Farm Mutual Auto. Ins. Co.*, 457 F.Supp.3d 998, 1003 (internal citations omitted).

KAT's argument that Safeco unreasonably delayed payment on the claim turns on the readjustment conducted by Naas, "more than seven months after [the] initial adjustment," which "yielded a value more than double Defendant's original adjustment." (ECF No. 43.) KAT argues

10

that Sewald refused to reconsider his original adjustment and would not re-visit the property to consider the additional areas of damage not addressed in his initial adjustment. KAT also places significant emphasis on the seven months that passed between Sewald's adjustment and Naas's revised adjustment. Finally, KAT asserts that it is entitled to approximately an additional $21,500 dollars that Safeco still has not paid, and that this, too, constitutes an unreasonable delay. In support of all of these arguments KAT offers the opinion of its expert, Dave O'Donnell. (ECF No. 44-8.)

First, O'Donnell asserts that "where Safeco's undisputed adjustment of the claim more than seven months later is more than 100% of the original adjustment, questions of reasonableness arise." He argues that Safeco refused to reconsider its original estimate although he concedes that Sewald informed KAT that he would consider any information regarding code upgrades that KAT or Brown sent to Safeco. And O'Donnell does not dispute that no such information was sent to Safeco until approximately five months after the original adjustment. O'Donnell also concedes that once the claim was reassigned to Naas, "Safeco was 'open' to readjusting the claim, and in fact, did so." And, the Court notes, Naas readjusted the claim within three months of KAT's efforts to reinitiate the process in the Spring. Like the court in the case of *Wak Inc. v. Ohio Security Ins. Co.*, 2019 WL 859709, *6 (D. Colo. 2019), the Court perceives "[t]he real thrust" of KAT's argument to be that because the readjusted total was "so much higher than the initial claim determination, the initial determination *must* have been unreasonable." (Emphasis original.) But as in that case, the Court concludes that the question isn't whether the original determination was unreasonable, but whether the delay between the November 21, 2017 determination and the July 2, 2018 determination was unreasonable. *Id.*

Turning, then, to KAT's argument on the seven-month gap between the two adjustments, the Court notes that KAT's own expert attributes the delay between November 2017 and April

11

2018, to Brown and his choice to wait until Spring to have the repairs performed—not any delay by Safeco. O'Donnell further notes that during the period between April 2018, when Brown and KAT reinitiated the process with Safeco, and July 2018, when the new adjustment was completed, "Safeco was, for the most part, responsive" to the communications from KAT. O'Donnell points to a gap between May 7, 2018, and June 15, 2018 "in which Safeco did not reply to KAT Construction's inquiries." But KAT offers no authority, and the Court is aware of none, for the proposition that a failure to correspond for a period of slightly over one month, during an active adjustment process, constitutes an unreasonable delay. Moreover, neither O'Donnell's statement nor any of KAT's other evidence tends to demonstrate that such a gap is outside of the industry standard. In fact, "[u]nreasonable delay typically involves an insurance company sitting on a claim for months or even years." *Vinnedge v. Owners Ins. Co.*, 2021 WL 2290786, *5 (D. Colo. 2021); *see also Stamey v. National General Ins. Co.*, 2016 WL 8540310, *3-4 (D. Colo. 2016) (noting that the Colorado Division of Insurance Regulation § 5-1-14 provides insurers with a 60-day "safe haven" in which to respond to claims without facing an administrative penalty for delay, and concluding that the regulation constituted evidence of the industry standard that, in the event of a reasonable dispute between the parties, a delay of payment of two months is not unreasonable).

      The evidence, much of it submitted by KAT itself, demonstrates that Safeco and KAT were attempting to reach an agreement about the proper value for the necessary repairs to Brown's property. (ECF Nos. 35-5, 44-3, 44-4, 44-5, 44-6, 44-7, 44-11, 44-13.) "An insured should not be allowed to automatically accuse an insurer of bad faith in every situation in which the insurer disagrees with the insured about the value of a claim." *Canady v. Nationwide Affinity Ins. Co. of America*, 2020 WL 376494, *4 (D. Colo. 2020). The conclusory allegation that the delay during the ongoing negotiation was unreasonable is not sufficient to create a genuine issue of material

fact. *See Brown Mackie Coll. v. Graham*, 981 F.2d 1149, 1151 (10th Cir. 1992) ("The mere existence of *a scintilla of evidence in support of the plaintiff's position will be insufficient*; there must be evidence on which the jury could reasonably find for the plaintiff." (alteration original) (quoting *Anderson*, 477 U.S. at 252)).

KAT's final argument is that Safeco unreasonably delayed payment of an insurance benefit because it refused to budge from its second estimate and would not pay KAT the additional $21,500 it believed it was owed. O'Donnell points to numerous gaps in communication between the date of Safeco's final payment, on or around July 3, 2018, and the filing of this lawsuit and asserts that by allowing the claim to "linger[] for so long" Safeco may have unreasonably delayed payment of a claim. (ECF No. 44-8.) As discussed in the analysis of the breach of contract claim, however, the Court has already concluded that Safeco paid its obligation in full when it made the final payment on the $65,082.54 Brown was owed. Thus, Safeco's failure to continue readjusting the claim after that payment was made, in July of 2018, was neither an unreasonable delay nor an unreasonable denial of a benefit owed. Simply put, Safeco owed no additional benefit, so there was no benefit for it to delay or deny at that point.

The Court concludes that KAT has failed to present evidence that would allow a reasonable factfinder to conclude, under the proper legal standard, that Safeco unreasonably delayed payment of Brown's insurance benefit. Therefore, the Court also concludes that Safeco is entitled to judgment on this claim as a matter of law and Safeco's Motion for Summary Judgment is GRANTED on the statutory claim for unreasonable delay or denial of an insurance benefit.

### IV. CONCLUSION

Accordingly, it is **ORDERED**

(1) That the Motion for Summary Judgment (ECF No. 34) is GRANTED;

(2) That the trial preparation conference and trial dates set in this matter are

hereby VACATED;

(3) That the Clerk of the Court shall enter judgment in favor of Defendant Safeco Insurance Company of America and against Plaintiff KAT Construction Management, LLC; and

(4) That Defendant Safeco Insurance Company of America is awarded costs and shall within 14 days of the date of this Order file a bill of costs, in accordance with the procedures under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1, which shall be taxed by the Clerk of the Court.

DATED this 14th day of January, 2022.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge